UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**THERESA NAOMI DEES,**

       **Plaintiff,**

v.    Case No:   6:17-cv-1052-Orl-41GJK

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## REPORT AND RECOMMENDATION

Theresa Dees (the "Claimant") appeals to the District Court a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI"). Doc. No. 1. Claimant argues that the Administrative Law Judge (the "ALJ") committed reversible error by: 1) making findings regarding Claimant's credibility that were not supported by substantial evidence; and 2) applying improper legal standards to a Residual Functional Capacity Questionnaire (the "RFC Questionnaire") from Dr. James Byrne, Claimant's treating physician. Doc. No. 15 at 13-17, 24-26. Claimant requests that the Court reverse the Commissioner's final decision and remand the case for further proceedings. *Id.* at 29. For the reasons set forth below, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's final decision and **REMAND** the case for further proceedings.

I.    PROCEDURAL BACKGROUND

On May 28, 2013, Claimant filed her SSI application alleging a disability onset date of January 30, 2009. R. 223. Claimant later amended her disability onset date to August 14, 2013. R. 384. On August 21, 2013, Claimant's application was denied initially. R. 141-43. On November

13, 2013, Claimant's application was denied upon reconsideration. R. 148-152. On December 6, 2013, Claimant requested a hearing before the ALJ. R. 154. On March 7, 2016, Claimant attended a hearing before the ALJ. R. 62-113. On April 15, 2016, the ALJ issued an unfavorable decision finding Claimant not disabled. R. 34-49. On June 15, 2016, Claimant requested review of the ALJ's decision. R. 8. On April 11, 2017, the Appeals Council denied Claimant's request. R. 1-6. On June 9, 2017, Claimant filed this appeal. Doc. No. 1.

## II.    STANDARD OF REVIEW

The Social Security regulations delineate a five-step sequential evaluation process for determining whether a claimant is disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must take into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations and quotations omitted).

### III.     ANALYSIS

#### A.  Claimant's Credibility

At step two, the ALJ found that Claimant had severe impairments of: degenerative disc disease of the cervical and lumbar spine; generalized arthritis; fibromyalgia; myasthenia gravis; and a history of migraine headaches. R. 36. At step four, the ALJ found Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms not credible.[1] R. 40. The ALJ made three separate credibility findings. First, the ALJ found that Claimant "has described daily activities, which are not entirely limited." R. 46. Specifically, the ALJ stated:

> At one point or another in the record, [Claimant] has reported the following activities: occasionally taking/picking her daughter up from school and/or functions, cooking simple meals, taking care of personal needs, doing laundry and light household chores when her pain allowed, driving [one to two] times a week, using a computer/phone, being able to manage finances, and shopping while leaning onto a cart.

*Id.* (citing R. 234-38, 257-261, 450). Second, the ALJ found that Claimant's "treatment has been essentially conservative in nature and somewhat effective in controlling her pain." *Id.* Finally, the ALJ found that "physical examinations do not document any objective findings that would prevent [Claimant] from performing work activity within the established residual functional capacity ("RFC")." *Id.* The ALJ then cites evidence in support of this credibility finding, noting: 1) an August 2013 examination revealing normal gait without an assistive device, no sensory loss, normal muscle strength, and full range of motion; 2) a September 2013 examination revealing no tenderness or swelling and full range of motion; 3) two examinations from July 2015 showing

---

[1] In the Eleventh Circuit, subjective complaints of pain are governed by a two-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding based on substantial supporting evidence in the record. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). The lack of a sufficiently explicit credibility finding may be grounds for remand if credibility is critical to the case's outcome. *Id.*

normal motor strength in the upper extremities and normal gait; and 4) examinations from February 2015 and October 2015 noting 5/5 bilateral motor strength in the upper and lower extremities and normal gait. *Id.* (citing R. 446, 484-495, 725, 839, 850).

Claimant argues that the ALJ erred in making the above-referenced credibility findings. First, Claimant argues that none of her activities of daily living conflict with her testimony regarding her limitations. Doc. No. 15 at 25. Second, Claimant argues that the ALJ's second credibility finding overlooks records from the Laser Spine Institute noting that Claimant "had attempted numerous forms of conservative care for her neck and low back pain with no persisting relief." *Id.* at 25-26. Claimant also notes that she was scheduled to have multiple surgeries with the Laser Spine Institute which were later cancelled through no fault of her own.[2] *Id.* Third, Claimant argues that the ALJ's third credibility finding failed to provide specific or adequate reasons for finding her statements not credible. *Id.* at 26. Finally, Claimant argues that the ALJ's third credibility finding "overlooked all of the evidence that supported [her] testimony." *Id.*

1) **Activities of Daily Living**

When making his first finding regarding Claimant's credibility, the ALJ found that Claimant's reported daily activities were not limited. R. 46. Specifically, the ALJ noted that Claimant occasionally picks her daughter up from school and other functions, cooks simple meals, takes care of her personal needs, does laundry and light household chores when her pain allows, drives once or twice per week, uses a computer and phone, manages her finances, and shops while leaning onto a cart. *Id.*

---

[2] The records from the Laser Spine Institute state that Claimant "has attempted numerous forms of conservative care with no persisting relief." R. 819. Such records also state that Claimant was a candidate for multiple surgeries, but such surgeries were cancelled because Claimant: 1) desired to have multiple surgeries over a short time frame; and 2) was going through personal issues which made her not emotionally ready to undergo multiple procedures. R. 808. The ALJ noted that despite surgeries being recommended, Claimant had not undergone any surgery. R. 46.

This Court has found reversible error when an ALJ detracts from a Claimant's credibility based on daily living activities that have no relationship with a claimant's alleged impairments, especially if such activities are of a short duration, limited, and not vigorous. *See Lafond v. Comm'r of Soc. Sec.*, No. 6:14–cv–1001–Orl–DAB, 2015 WL 4076943, at *10 (M.D. Fla. July 2, 2015) (finding that the ALJ erred by considering evidence that the claimant drove short distances, washed dishes, prepared meals, shopped for groceries, and did her own laundry in assessing credibility); *Wolfe v. Comm'r of Soc. Sec.*, No. 6:11–cv–1316–ORL–DAB, 2012 WL 3264916, at *6 (M.D. Fla. Aug. 10, 2012) (finding that the ALJ erred by considering evidence that the claimant went grocery shopping, prepared meals, and performed household chores in assessing credibility). *See also Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) ("Nor do we believe that participation in everyday activities of short duration, such as housework...disqualifies a claimant from disability or is inconsistent with the limitations recommended by...treating physicians.").

Here, the ALJ detracted from Claimant's credibility by relying on infrequent activities such as Claimant's occasional driving and picking her daughter up from school. R. 46. The ALJ also relied on non-vigorous activities such as cooking simple meals, doing light household chores, using her computer and phone, and managing finances. *Id.* Considering that the ALJ used infrequent and non-vigorous daily living activities to detract from Claimant's credibility, it is recommended that the Court find error in the ALJ's first credibility finding.

**2) Conservative Treatment**

Claimant's second argument challenges the ALJ's second credibility finding, which noted Claimant's conservative treatment and the effectiveness of the same. Doc. No. 15 at 25-26. Claimant argues that this finding overlooks records from the Laser Spine Institute noting that she had attempted numerous forms of conservative treatment for her neck and back pain with no

persistent relief. *Id.* Claimant also notes that she was scheduled to have multiple surgeries with the Laser Spine Institute which were later cancelled. *Id.* The ALJ, however, found that "despite the fact surgeries were recommended, there is no evidence in the file that [Claimant] has undergone any surgery." R. 46. Thus, the ALJ's finding that Claimant's treatment has been conservative and somewhat effective is supported by substantial evidence. Accordingly, it is recommended that the Court reject Claimant's second argument regarding the ALJ's credibility findings.

### 3) Evidence in Support of RFC

Claimant's final two arguments challenge the ALJ's third credibility finding which states that "physical examinations do not document any objective findings that would prevent [Claimant] from performing work activity within the established [RFC]." R. 46. Claimant argues that the ALJ's third credibility finding failed to provide specific or adequate reasons for finding her statements not credible. Doc. No. 15 at 26. The ALJ, however, cited a number of medical records in support of his credibility finding, including: 1) an August 2013 examination revealing normal gait without an assistive device, no sensory loss, normal muscle strength, and full range of motion; 2) a September 2013 examination revealing no tenderness or swelling and full range of motion; 3) two examinations from July 2015 showing normal motor strength in the upper extremities and normal gait; and 4) examinations from February 2015 and October 2015 noting 5/5 bilateral motor strength in the upper and lower extremities and normal gait. R. 46 (citing R. 446, 484-495, 725, 839, 850). Thus, the ALJ's third credibility finding is supported by substantial evidence.

Claimant also argues that the ALJ's third credibility finding "overlooked all of the evidence that supported [Claimant's] testimony." Doc. No. 15 at 26. The undersigned, however, declines Claimant's invitation to reweigh the evidence. As noted above, the Court must give substantial deference to the Commissioner's final decision, even if it finds that the record preponderates

against it. *See supra* p. 2. Thus, it is recommended that the Court reject Claimant's third and fourth arguments regarding the ALJ's credibility findings.

While some of the ALJ's reasons supporting his credibility finding may be supported by substantial evidence, others are not, and thus remand is warranted. *See Wolfe*, 2012 WL 3264916 at *6. *See also Himes v. Comm'r of Soc. Sec*. 585 F. App'x 758, 767 (11th Cir. 2014) (finding reversible error based on an ALJ's partially erroneous credibility rationale).[3] Accordingly, it is recommended that the Court reverse the Commissioner's final decision and remand the case for further proceedings.

### B. The RFC Questionnaire

The record contains Dr. Byrne's treatment records from 2010 through 2016. R. 398-412, 413-444, 647-662, 674-686, 694-710, 853-866. Some of these records include Claimant's lab testing results, while other records include treatment notes from Dr. Byrne that are largely illegible. *See e.g.* R. 398-412, 413-444, 674-686.

On March 28, 2014, Dr. Byrne completed the RFC Questionnaire stating the following. R. 505-07. Claimant has pain, fatigue, and weakness that often interferes with her concentration. R. 505. Claimant can sit for fifteen minutes at a time and stand for ten minutes at a time. *Id.* Claimant is able to sit, stand, and walk for a total of less than two hours in an eight-hour workday. *Id.* Claimant needs to sit in a recliner or lie down seven to eight hours each day. *Id.* Claimant cannot lift and carry less than ten pounds in a competitive work situation and cannot stoop, crouch, kneel, or climb stairs. R. 506. Claimant is able to grasp, turn, and twist objects for only twenty percent of the time during an eight-hour work day. *Id.* Claimant's productivity level is seventy-five percent or less of a healthy individual. *Id.* Claimant has had these limitations since 2009. R. 507.

---

[3] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

In his decision, the ALJ twice noted that Dr. Byrne's "records are handwritten and very hard to read, with some notes being illegible." R. 37, 44. At step four, the ALJ found that Claimant has the RFC to perform a restricted range of light work with certain exertional and non-exertional limitations. R. 38-39. Specifically, the ALJ found that Claimant has the ability to: lift and/or carry and push and/or pull twenty pounds occasionally and ten pounds frequently; sit for four hours at a time and a total of eight hours in an eight-hour workday; stand and/or walk for two hours at a time and a total of six hours during an eight-hour workday; occasionally climb ladders and frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. R. 38.

The ALJ gave no weight to the RFC Questionnaire for two reasons:

> The [ALJ] has considered the opinion of Dr. Byrne and gives it no weight. [R. 505-507, 660-662]. The undersigned notes Dr. Byrne has a treatment history with [Claimant]; however, his opinion that [Claimant] cannot perform an eight-hour workday is inconsistent with his own treatment records [R. 398-412, 413-444, 647-662, 674-686, 694-710, 853-866] as well as the other evidence of record, which reveals only conservative treatment and notations that [Claimant] has responded well to treatment and is stable. Furthermore, examinations and diagnostic testing throughout the record [do] not document any objective medical findings that would prevent [Claimant] from performing work activity within the established [RFC]. For example:

R. 45. Thus, the ALJ gave no weight to the RFC Questionnaire because: 1) its statement that Claimant cannot perform an eight-hour workday is inconsistent with Dr. Byrne's treatment notes and record evidence showing only conservative treatment and Claimant responding well to such treatment; and 2) examinations and diagnostic testing throughout the record do not document any objective medical findings that would prevent Claimant from performing work within her RFC. *Id.* In support of his finding regarding the inconsistency between Dr. Byrne's treatment notes and the RFC Questionnaire, the ALJ made a general citation to all of Dr. Byrne's treatment records. *Id.* (citing R. 398-412, 413-444, 647-662, 674-686, 694-710, 853-866). In support of his second

finding, the ALJ only noted Claimant's GAF scores and assigned little weight to them. *Id.* After giving no weight to the RFC Questionnaire, the ALJ then made findings regarding Claimant's credibility and provided evidence in support of his credibility finding that "physical examinations do not document any objective findings that would prevent [Claimant] from performing work activity within the established [RFC]." R. 46. *See also supra* p. 6.

Claimant argues that the ALJ committed reversible error in his treatment of the RFC Questionnaire for three reasons. First, Claimant argues that it is unclear how the ALJ determined that the findings in the RFC Questionnaire were inconsistent with Dr. Byrne's treatment notes, which the ALJ twice noted were very hard to read or illegible. Doc. No. 15 at 15. Second, Claimant argues that the ALJ's first reason overlooks records from the Laser Spine Institute noting that Claimant had attempted numerous forms of conservative treatment for her neck and back pain with no persistent relief. *Id.* at 16. Finally, Claimant argues that the ALJ's second reason is conclusory, and thus, not supported by substantial evidence. *Id.* at 16-17.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part in determining whether a claimant is disabled. In cases involving an ALJ's handling of medical opinions, "substantial-evidence review . . . involves some intricacy." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 931 (11th Cir. 2013). In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* at 1178-79 (citations omitted). "In the absence of such a statement, it is impossible for a reviewing

court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179 (citations omitted). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (finding that a failure to state with particularity the weight given to medical opinions and the reasons therefor constitutes reversible error). An ALJ may not "implicitly discount" or ignore any medical opinion. *Winschel*, 631 F.3d at 1178-79; *MacGregor*, 786 F.2d at 1053; *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962-63 (11th Cir. 2015) (finding that it is reversible error for the ALJ to fail to state weight given to a non-examining physician's opinion).

Absent good cause, the opinion of a treating physician must be given substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). However, good cause exists to give a treating physician's opinion less than substantial weight when the opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

Claimant's first argument states that a portion of the ALJ's first reason for giving no weight to the RFC Questionnaire is not supported by substantial evidence. Doc. No. 15 at 15. Specifically, Claimant argues that it is unclear how the ALJ found the RFC Questionnaire to be inconsistent with Dr. Byrne's treatment notes when the ALJ stated that such treatment notes were either very hard to read or illegible. *Id.* (citing R. 37, 44). When finding that Dr. Byrne's treatment notes contradicted the RFC Questionnaire, the ALJ did not mention or cite a specific treatment note. R. 45. Instead, the ALJ made a general citation to Dr. Byrne's treatment records. *Id.* (citing R. 398-412, 413-444, 647-662, 674-686, 694-710, 853-866). Moreover, when discussing Dr. Byrne's treatment notes in other parts of his opinion, the ALJ only discusses Dr. Byrne's diagnoses and

prescriptions for Claimant's mental limitations. R. 37, 44.

This Court has held that the illegibility of important evidence may warrant remand in order to determine whether the Commissioner fully understood such evidence. *See Eubanks v. Comm'r of Soc. Sec.*, No. 6:16–cv–437–Orl–DCI, 2017 WL 4050162, at *6 (M.D. Fla. Sept. 13, 2017); *Melendez v. Comm'r of Soc. Sec.*, No. 6:15-cv-1319-Orl-37KRS, 2016 WL 7093433, at *7 (M.D. Fla. Nov. 10, 2016) (citations omitted) ("The illegibility of important evidentiary material can warrant a remand for clarification and supplementation to determine whether the Commissioner fully understood the medical evidence in the record"). Furthermore, this Court has found remand necessary when the ALJ merely recites a good cause reason for rejecting a treating physician's opinion, but fails to provide any evidence in support. *See Paltan v. Comm'r of Social Sec.*, No. 6:07–cv–932–Orl–19DAB, 2008 WL 1848342 at *5 (M.D. Fla. Apr. 22, 2008) ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required"); *Anderson v. Astrue*, No. 3:12–cv–308–J–JRK, 2013 WL 593754 at *5 (M.D. Fla. Feb. 15, 2013) (noting that an ALJ must do more than recite a good cause reason for rejecting a treating physician's opinion and must articulate evidence supporting that reason) (citing authority).

Here, the ALJ: 1) twice stated that Dr. Byrne's treatment notes were either hard to read or illegible; and 2) made only a general citation to Dr. Byrne's treatment records when purporting to find inconsistencies between them and the RFC Questionnaire. R. 37, 44, 45. Given the foregoing, the undersigned is unable to perform a meaningful review of whether the ALJ's finding is supported by substantial evidence. Because remand is already necessary for the ALJ to revisit his credibility finding, the undersigned also finds remand warranted for the ALJ to specify how Dr.

Byrne's treatment notes contradicted his own RFC Questionnaire.[4]

Claimant's second argument states that a portion of the ALJ's first reason for giving no weight to the RFC Questionnaire is not supported by substantial evidence because it overlooks records from the Laser Spine Institute.[5] Doc. No. 15 at 16. Claimant presented the same argument when challenging the ALJ's credibility finding. *See supra* pp. 5-6. The fact remains that Claimant's treatment was conservative and no surgeries had been performed at the time of the hearing. R. 46. Thus, the ALJ's finding regarding conservative treatment is supported by substantial evidence. Accordingly, it is recommended that the Court reject Claimant's second argument regarding the ALJ's treatment of the RFC Questionnaire.

Claimant's final argument states that the ALJ's third reason for giving little weight to the RFC Questionnaire is conclusory, and thus, not supported by substantial evidence. Doc. No. 15 at 16-17. The undersigned agrees. The ALJ gave little weight to the RFC Questionnaire because "examinations and diagnostic testing throughout the record [do] not document any objective medical findings that would prevent [Claimant] from performing work activity within the established [RFC]. For example:" R. 45. The only example provided after this statement was a discussion of Claimant's GAF scores, which the ALJ assigned little weight. *Id.* Such actions constitute error because the ALJ provided no reasons in support of his finding that the examinations and diagnostic testing do not document any objective medical findings that would prevent Claimant from performing work activity within the ALJ's RFC finding. *Id.* Accordingly, it is recommended that the Court reverse and remand the case for further proceedings.

---

[4] On remand, the ALJ should consider contacting Dr. Byrne and inquiring about the content of his treatment notes and how such treatment notes relate to his findings in the RFC Questionnaire. *See Melendez,* 2016 WL 7093433 at *7 ("[T]o the extent that the ALJ could not read [a treating psychiatrist's] treatment notes, the better practice would have been to contact [him] to obtain legible copies of his treatment notes or his testimony to support his functional capacity assessment").

[5] *See supra* p. 4 n. 2.

### IV. CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that the Court:

1) **REVERSE** and **REMAND** the Commissioner's final decision for further proceedings pursuant to sentence four of Section 405(g); and

2) Direct the Clerk to award judgment in favor of Claimant and to close the case.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

Recommended in Orlando, Florida on February 13, 2018.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy